## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthonee Patterson | : | |
| | : | No. 439 C.D. 2018 |
| v. | : | |
| | : | Submitted: December 28, 2018 |
| Kenneth Shelton, | : | |
| Appellant | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                         FILED:  April 15, 2019

Kenneth Shelton (Shelton) appeals from the March 21, 2018 order of the Court of Common Pleas of Philadelphia County (trial court) denying his petition requesting that the trial court strike its prior orders confirming an April 26, 2006 arbitration award and refusing to vacate said award.

## Facts and Procedural History

This case has a long and complicated history before this Court and the trial court, most recently summarized in *Patterson v. Shelton*, 175 A.3d 442 (Pa. Cmwlth. 2017).  In our 2017 decision, we referred to a 2013 unpublished decision from this Court, *Patterson v. Shelton* (Pa. Cmwlth., No. 2396 C.D. 2011, filed March 6, 2013), *appeal denied*, 78 A.3d 1092 (Pa. 2013), wherein we provided the following procedural history:

The key players involved in the present offshoot of the controversy are: (1) the Church of the Lord Jesus Christ of the Apostolic Faith (**the "Church"**), an unincorporated association, founded in 1919; (2) the "Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.", (**the "Corporate Trustee"**), a Pennsylvania nonprofit corporation formed in 1947 **to act as the trustee and hold property in trust for the Church**; (3) Patterson, a life-long member, elder, and minister of the Church; and (4) Shelton, the current "Bishop" and/or "Overseer" of the Church and "President" of the Corporate Trustee.

The dispute began in 1991 when then-Bishop S. McDowall Shelton, died, leaving vacancies in the offices of "Overseer" of the Church and "President" of the Corporate Trustee. Immediately upon Bishop S. McDowall Shelton's death, Shelton and his "faction" took control of the accounts, trusts and properties of the Church and Corporate Trustee. After extensive litigation initiated by two other dissident factions of the Church congregation over the leadership of the Church and Corporate Trustee, the trial court ultimately determined, and this Court later affirmed, that Shelton and his Board of Trustees were in control.

. . .

On July 24, 1995, Patterson, as life-long member, elder and minister of the Church, commenced an action in equity against Shelton, in Shelton's individual capacity and as the President of the Board of Trustees of the Corporate Trustee. Patterson alleged that since taking control of the Church and Corporate Trustee in 1991, Shelton and his Board of Trustees have misappropriated funds, "looted the Church's assets," paid themselves salaries in contravention of Church By-Laws, and funded private expenditures, lavish vacations, lingerie, cars, homes and other personal incidentals with assets which were donated and designated for Church religious and charitable missions.

Patterson requested, *inter alia*: (1) the appointment of a receiver to take control of the assets of the Church held by the Corporate Trustee; (2) an order requiring Shelton to issue

2

annual financial reports for the years 1991, 1992, 1993, and 1994; and (3) an accounting.

The parties engaged in discovery. Patterson retained James A. Stavros, CPA (Stavros), a forensic financial investigator, to analyze the finances and expenditures of the Church and the Corporate Trustee. Stavros authored a report which detailed his findings that Shelton and his Board of Trustees withdrew hundreds of thousands of dollars from Church accounts with no accounting of where the funds went and that they expended Church funds on a significant amount of "personal" items and expenditures that appeared to be outside the normal course of business and outside Church laws and customs. He concluded that Church accounts had declined by nearly $1 million under Shelton's control.[1]

In January 2006, the parties agreed to submit to binding arbitration. The Arbitrator concluded that the credible evidence established that Shelton had engaged in various acts of fraud, mismanagement, conspiracy, breach of fiduciary responsibilities, violations of By-laws and the Articles of Incorporation in seizing corporate funds and assets and depleting bank accounts designated for Church-related purposes. The Arbitrator concluded that Shelton had diverted Church funds and assets to himself and others for his and their benefit. The Arbitrator appointed a receiver and directed Shelton to account for all Church funds removed by him or those acting with him.

Shelton filed a motion to vacate the award which the trial court denied.[2] On appeal, this Court overturned the arbitration award because the Arbitrator went beyond the

---

[1] Patterson's original complaint was stricken by the trial court in 1996 for unknown reasons and reinstated upon Patterson's motion in 2004. However, during the interim, the trial court determined that Shelton was the rightful General Overseer of the Church and President of the Corporation. By decision dated April 10, 2001, this Court affirmed the trial court's determination and our Supreme Court denied separate petitions for allowance of appeal. *See Church of the Lord Jesus Christ of the Apostolic Faith v. Shelton* (Pa. Cmwlth., Nos. 376, 559 C.D. 2000, filed April 10, 2001), *appeals denied*, 790 A.2d 1019 (Pa. 2001), and 812 A.2d 1232 (Pa. 2001).

[2] By order dated July 10, 2006, the trial court confirmed the Arbitrator's award in favor of Patterson and against Shelton and entered judgment in conformity therewith.

3

scope of his authority in fashioning relief. *See Shelton v. Patterson*, 942 A.2d 967 (Pa. Cmwlth. 2008). This Court remanded the matter to the trial court to determine whether Patterson was entitled to relief under the [Pennsylvania Nonprofit Corporation Law of 1988 (NCL), 15 Pa.C.S. §§5101-5998; 6101-6146].

On remand, Shelton moved for summary judgment on the ground that Patterson lacked "statutory standing" under Section 5782 of the NCL, 15 Pa.C.S. §5782. Shelton argued that only an officer, director, or member of a nonprofit corporation has "statutory standing" to enforce a right of a nonprofit corporation through a derivative action.

. . .

Shelton pointed to the Corporate Trustee's Articles of Incorporation which limited its membership in the nonprofit corporation to its Board of Trustees. Shelton asserted that because Patterson was never a member of the Board of Trustees he was never a "member" of the Corporate Trustee, and thus, he had no "statutory standing" to bring claims that are derivative of the Corporate Trustee's rights.

The trial court agreed that under Section 5782 of the NCL, Patterson could only bring suit if he was a member of the Corporate Trustee at the time of the alleged events outlined in the Complaint. The trial court looked to Article IX of the Articles of Incorporation which states: "membership in the corporation [Corporate Trustee] shall consist of those persons serving as members of the Board of Trustees." The trial court concluded that because Patterson had never been a member of the Board of Trustees he was not a member of the Corporate Trustee. The trial court reasoned that because the NCL created the cause of action and designated who may sue; standing was a jurisdictional prerequisite to any action. *Grom v. Burgoon*, 672 A.2d 823 (Pa. Super. 1996). The trial court "finding no possible way to affirm that [Patterson] has standing" granted the motion for summary judgment and dismissed the case.

*Id.*, slip op. at 1-6 (emphasis in original).

4

Our 2017 decision further summarized as follows:

On appeal, this Court reversed the order of the trial court, concluding that Patterson, as a member of the Church congregation, was "part of the beneficiary class for which the Corporate Trustee held the Church's assets in trust," and, as such, had "standing to bring this action to enforce his own rights and the rights commonly held by all beneficiaries to obtain restoration to the Church of its full losses." *Id.*, slip op. at 16-17. We remanded the matter to the trial court to conduct a trial on the remaining factual and legal issues raised by Patterson in his complaint.

On July 15, 2014, the trial court commenced a non-jury trial. During the course of the trial, an issue arose as to whether the trial court had subject matter jurisdiction over this dispute. Following argument, the trial court concluded that it lacked such jurisdiction because the matter requires interpretation of religious doctrine and the same was prohibited by the First Amendment. Hence, the trial court issued an order granting a motion to dismiss filed by Shelton. Patterson appealed to this Court, but we affirmed the trial court's order, concluding that the trial court ably disposed of the subject matter jurisdiction issue in its opinion. Patterson thereafter sought allowance of appeal with the Pennsylvania Supreme Court, but the same was denied. Patterson subsequently filed a petition for a writ of certiorari with the United States Supreme Court, but the same was similarly denied.

On May 27, 2016, Patterson filed a motion with the trial court to determine certain orders void based on the lack of subject matter jurisdiction. In his motion, Patterson sought an order from the trial court "declaring that the January 31, 2008 Commonwealth Court Order, and all other post-July 10, 2006 rulings/orders not consistent with the judgments on the binding common law arbitration award, are void . . . ." Patterson alleged that the trial court "finally determined what [he] has been arguing all along – that there was no subject matter jurisdiction as the parties had agreed to resolve all of their disputes through binding, common law arbitration." In sum, Patterson alleged that only the 2006 binding arbitration

5

award remained valid and asked the trial court to declare as void all post-July 10, 2006 rulings/orders that were inconsistent with that award because the courts lacked subject matter jurisdiction to alter the same.

By order dated July 14, 2016, the trial court denied Patterson's motion.[3] Patterson filed a notice of appeal with the trial court. The trial court thereafter issued an opinion in support of its order explaining that Patterson mischaracterizes its previous ruling regarding lack of subject matter jurisdiction. Contrary to Patterson's allegations, the trial court did not rule that it lacked subject matter jurisdiction because of the parties' agreement to litigate through binding arbitration; but rather, the trial court ruled that it lacked such jurisdiction due "to the Deference Rule, which prohibits courts from exercising jurisdiction over cases that would require them to decide ecclesiastical questions." In other words, the trial court explained that it had no ability "to decide religious questions" and that its prior opinion "never mentions the issue of jurisdiction as it relates to common law arbitration." Further, the trial court explained that it was "without jurisdiction to strike the Commonwealth Court's January 2008 order vacating the Arbitration Award" and lacked the authority to disturb an appellate court ruling. *Id.* For the same reasons, the trial court noted that it had no power to reinstate the arbitration award which had been vacated on appeal.

*Patterson*, 175 A.3d at 446-47 (citations omitted).

Following an appeal by Patterson, this Court reversed the trial court's July 14, 2016 order, concluding as follows:

In this case, Patterson's original complaint filed with the trial court sought relief under the NCL. The parties ultimately agreed to proceed to binding arbitration in November 2005,

---

[3] Shelton had filed a motion to strike Patterson's motion as moot, alleging that Patterson's motion "defies logic and violates bedrock principles of jurisdiction and substantive law." In this motion, Shelton also sought sanctions for Patterson's alleged bad-faith, frivolous motion. However, by separate order of the same date, the trial court dismissed Shelton's motion to strike as moot in light of its order denying Patterson's motion.

with no right to appeal, as memorialized in an order from the trial court dated January 10, 2006. This order also dismissed the case from the trial court per agreement of the parties. Nevertheless, after the Arbitrator ruled in Patterson's favor, Shelton filed a petition to vacate the arbitration award with the trial court. While the trial court denied Shelton's petition, this Court reversed the trial court's decision, vacated the arbitration award, and remanded to the trial court for further proceedings relating to these NCL claims. However, because this Court affirmed the trial court's decision concluding that it lacked subject matter jurisdiction over his remaining NCL claims on the basis that resolution of the same would require the trial court to interpret religious doctrine, something it was prohibited from doing under the First Amendment, any prior decisions relating to the same are null and void. As a result, the only valid, remaining determination in this case is the binding arbitration award, as agreed to by the parties in November 2005, and confirmed by the trial court. As noted above, the trial court, by order dated July 10, 2006, confirmed the Arbitrator's award and entered judgment in favor of Patterson and against Shelton in an order dated July 20, 2006.[4] Thus, Patterson's remedy lies with enforcement of that judgment.

*Patterson*, 175 A.3d at 449-50.[5]

---

[4] A similar order was issued by the trial court on October 12, 2006, entering judgment in favor of Patterson. Additionally, the final adjudication and decree of the Arbitrator was entered as an order of the trial court on April 17, 2017. These orders, dated July 10 and 20, 2006, October 12, 2006, and April 17, 2017, collectively represent the last valid judgments in this case.

[5] Shelton subsequently filed a petition for allowance of appeal from this Court's 2017 decision with our Pennsylvania Supreme Court, but the same was denied by order dated July 31, 2018. *Patterson v. Shelton*, 190 A.3d 592 (Pa. 2018). Shelton filed a petition for writ of certiorari with the United States Supreme Court, but the same was recently denied by order dated February 19, 2019. *Shelton v. Patterson*, ___ U.S. ___, 139 S.Ct. 1211 (2019).

**Shelton's Most Recent Motion**

On January 31, 2018, Shelton filed the present motion with the trial court seeking to strike all prior orders of the trial court as void for lack of subject matter jurisdiction. In this motion, Shelton alleged that "Pennsylvania courts do not have and never had subject matter jurisdiction over this religious dispute" and that "[t]herefore, [the trial court] must strike *all* of its prior orders as void *ab initio* and decline to take any further action in this matter." (Reproduced Record (R.R.) at 90.)[6] Shelton also simultaneously filed a brief in support of his motion.

Patterson filed a response asserting that Shelton's motion constituted an impermissible attack on this Court's prior orders dated November 29 and December 22, 2017. Patterson stated that said orders held that the 2006 binding arbitration award was the only valid, remaining determination in this case, referenced the trial court's confirmation of the award and entry of judgment in his favor, and directed any attempts to enforce this judgment to the trial court. Patterson also contended that Shelton's motion attempted to resurrect legal arguments that had been previously rejected by this Court and sought relief that wholly contradicted our prior opinions and orders. In an accompanying brief, Patterson noted that Shelton understood the impact of this Court's November 29, 2017 order, as evidenced by his filing of an application for reargument providing that "[t]he apparent effect of the panel's decision is the retroactive validation of an arbitration decision . . . ." (R.R. at 371.)

By order dated March 21, 2018, the trial court denied Shelton's motion. Shelton thereafter filed a notice of appeal with this Court. The trial court subsequently issued an opinion in support of its order. The trial court noted that it had long ago denied a petition from Shelton to vacate the arbitration award, confirmed the award in

---

[6] Shelton's reproduced record does not contain the lowercase "a" in the page number as required by Pa.R.A.P. 2173.

8

favor of Patterson, and entered judgment in his favor. The trial court also noted that this Court had recently declared the arbitration award to be the last valid judgment in this matter. The trial court explained that it was bound by this Court's prior decisions and had no authority to grant Shelton's motion.

## Discussion

On appeal, Shelton reiterates his arguments that the trial court was required to strike all of its prior orders as void for lack of subject matter jurisdiction and that no court can take any further action in this matter. For the following reasons, we disagree.

In our prior decision and order dated November 29, 2017, this Court specifically held that:

> [T]he only valid, remaining determination in this case is the binding arbitration award, as agreed to by the parties in November 2005, and confirmed by the trial court. As noted above, the trial court . . . confirmed the Arbitrator's award and entered judgment in favor of Patterson and against Shelton in an order dated July 20, 2006. Thus, Patterson's remedy lies with enforcement of that judgment.

*Patterson*, 175 A.3d at 450. In a subsequent clarification order dated December 22, 2017, this Court identified the various dates on which the trial court confirmed the Arbitrator's award, entered judgment in favor of Patterson, and, most importantly, directed "[a]ny attempts to enforce these orders . . . to the trial court."   (R.R. at 306.) In other words, this Court found the trial court's orders relating to the Arbitrator's award to be valid and enforceable against Shelton and the trial court was bound by this Court's prior orders.

Moreover, as Patterson notes in his brief, Shelton's most recent attempt to relitigate the validity of the trial court's orders confirming the Arbitrator's award and

9

entering judgment in Patterson's favor is barred by the doctrine of the "law of the case." Our Supreme Court has declared that the "law of the case" doctrine prohibits an appellate court, upon a second appeal, from altering "the resolution of a legal question previously decided by the appellate court in the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995); *see also In re Pennsylvania Turnpike Commission*, 715 A.2d 1219, 1223 n.10 (Pa. Cmwlth. 1998) ("Issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be considered on appeal.") Further, while Shelton is correct that our 2017 decision did not expressly overrule this Court's 2008 opinion (relating to the arbitrator exceeding the scope of his authority), the latter decision did in fact effectively overrule the 2008 opinion by holding that any prior decisions were null and void and that the only valid, remaining determination in this case was the binding arbitration award.

### Conclusion

Because Shelton's current appeal challenges the trial court's prior orders in this case confirming the arbitration award and entering judgment in favor of Patterson, which we have previously ruled to be the only valid, remaining determinations herein, thereby precluding any further challenge under the "law of the case" doctrine, the trial court did not err in denying Shelton's petition seeking once again to strike these orders.

Accordingly, the order of the trial court is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge


10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthonee Patterson              :
                              :    No. 439 C.D. 2018
             v.            :
                              :
Kenneth Shelton,           :
              Appellant      :

## *<u>ORDER</u>*

AND NOW, this 15th day of April, 2019, the order of the Court of Common Pleas of Philadelphia County, dated March 21, 2018, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge